FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

DEC 20 2010

JAMES N. HATTEN, CLERK
By: _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION



| | |
|---|---|
| PAT HUDDLESTON II, not in his individual capacity but as the court appointed Receiver for the assets of Nations Warranty Group, Inc. and JW & P Consulting, LLC.,<br><br>       Plaintiff,<br><br>v.<br><br>KANDICE BLAKELY, PETER BREESE, DAVID PAUL BROWN, JANET BROWN, SHANE CRABTREE, JAMES DAVIS, JIM DEBETTA, JULIA DUGGER, FALCON CREST FOUNDATION, DAVE FRIEDMAN, DEAN HOBBS, WILLIAM HOBSON, JONATHON LOUDERMILK, RACHEL A. MCGREW, DOUGLAS MIKULA, COREY MILLER, ROBERT POWELL, VICTOR POWELL, PHILLIP PRICKETT, JUSTIN SHEPPARD, CHASE SHUMAN, JONATHON THOMPSON, VERDURE TECHNOLOGIES INC., DON WISEMAN, LYNN WISEMAN, TIMOTHY WOODWARD, POLLY ZIEAMMERMAN, | CIVIL ACTION NO.<br><br>**1: 10 - CV - 4125** |

1

| Defendants. | |
|---|---|

## COMPLAINT FOR DISGORGEMENT OF ILL-GOTTEN GAINS

Pat Huddleston ("Receiver"), the court-appointed Receiver for Nations Warranty Group, Inc. ("Nations Warranty") and JW & P Consulting, LLC ("JW & P"), by and through his attorneys, Williams Teusink Larsen PC, files this Complaint against the following Defendants: Kandice Blakely, Peter Breese, David Paul Brown, Janet Brown, Shane Crabtree, James Davis, Jim DeBetta, Julia Dugger, Falcon Crest Foundation, Dave Friedman, Dean Hobbs, William Hobson, Jonathon Loudermilk, Rachel A. McGrew, Douglas Mikula, Corey Miller, Robert Powell, Victor Powell, Phillip Prickett, Justin Sheppard, Chase Shuman, Jonathon Thompson, Verdure Technologies Inc., Don Wiseman, Lynn Wiseman, Timothy Woodward, Polly Zieammerman.

In support of his Complaint, the Receiver shows this Court the following.

## BACKGROUND AND OVERVIEW

1.

This action is the result of a fraudulent investment scheme involving the unlawful sale of promissory notes issued by Nations Warranty, a corporation organized under the laws of the State of Georgia.

2.

Between January of 2008 and September of 2008, approximately 270 Nations Warranty promissory notes were sold to over 120 investors, totaling over $2.8 million in sales.

3.

These promissory notes were sold to investors through a network of commissioned salespersons.

4.

Each Defendant is a salesperson that received commission payments for the sale of these promissory notes.

5.

The promissory notes sold by the Defendants were securities and were sold in violation of federal securities law. Specifically:

a)    The promissory notes were never registered with the United States Securities and Exchange Commission ("SEC").

b)    The Defendants who sold the promissory notes were never registered as securities dealers or brokers.

c)    The Defendants were selling the promissory notes and receiving commissions as part of a fraudulent Ponzi scheme.

6.

The success of Nations Warranty and JW & P's fraudulent investment scheme, which defrauded investors out of millions of dollars, depended on the sales made by these Defendants.

7.

The total amount of commissions paid to all the Defendants is greater than $160,000.

8.

On October 2, 2008, the SEC filed an application for a temporary restraining order and other equitable relief in this Court styled *Securities and Exchange Commission v. Nations Warranty Group, Inc. et al., Civil Action No. 1 08-CV-*

*3097-BBM* ("SEC Litigation"). On that same date, this Court entered an order appointing Pat Huddleston as the Receiver for Nations Warranty and JW & P.

9.

The Receiver has filed this action in an effort to recover the commissions paid to the Defendants as a result of the sale of the promissory notes.

## JURISDICTION AND VENUE

10.

The Receivership Court expressly authorized the Receiver "to pursue, resist and defend all suits, actions, claims and demands which may now be pending or which may be brought by or asserted against the Receiver Estate."

11.

The Receivership Court has subject matter jurisdiction over this Complaint pursuant to 28 U.S.C. §§ 754, 1367, and 1692 and pursuant to the doctrines of pendant and ancillary jurisdiction.

12.

The Receivership Court has personal jurisdiction over the Defendants pursuant to 28 U.S.C. §§ 754 and 1692.

13.

Under 28 U.S.C. §§ 754 and 1692, the Receivership Court has venue and jurisdiction over ancillary litigation initiated by the Receiver to recover investor funds and assets of the Receiver Estate located in other districts. SEC v. Bilzerian, 378 F.3d 1100, 1103 (D.C. Cir. 2004).

14.

Venue is proper in this Court.

## FACTUAL ALLEGATIONS

15.

In 2004, Nations Warranty was incorporated as a seller of after-market warranties for used automobiles.

16.

Sales of these warranties were generated from promotional mailings that prompted telephone calls to Nations Warranty from potential customers.

17.

Prior to January of 2008, Nations Warranty investigated ways of raising capital to fund bigger and more frequent promotional mailings. JW & P, a Georgia Limited Liability Corporation founded in 2007 and closely associated with Nations

Warranty, joined in this process.  This collaboration resulted in the decision to issue promissory notes.

18.

Two types of notes were issued by Nations Warranty.  The "Standard Note" promised to pay investors interest between 3% and 5% every 30 days for a term of 100 days.  The "Premier Note" promised to pay investors interest between 3% and 5% every 30 days for a term of 220 days.  Investor principal was to be repaid with the final interest payment.

19.

None of the promissory notes issued and sold by the Defendants for Nations Warranty were ever registered with the SEC.

20.

Defendants sold the promissory notes and received commission payments from Nations Warranty as compensation for their sales of the notes.

21.

Defendants, as salespersons of the promissory notes, had one of three titles: Referrer, Account Manager, or District Manager.

22.

Commissions received by the Defendants for their sale of a promissory note ranged from 8% to 15% of the note's principal, with the exact amount depending on the nature of the note purchased and the rank of the salesperson. Commissions were paid out of the principal amount invested by the noteholder.

23.

The Defendants were not registered with the SEC as securities dealers or brokers who could lawfully sell such securities.

24.

A 17-page powerpoint presentation was used to market the promissory notes and train those selling the promissory notes.  This presentation was available on the websites of Nations Warranty and JW & P.

25.

Salespeople were required to read the presentation and pass an exam based on its information before using the contents of the presentation to sell the promissory notes to investors.

8

26.

In the presentation, Nations Warranty put forth substantial misrepresentations and omissions that would be important to a reasonably prudent investor, including:

a. The misrepresentation that Nations Warranty was a profitable business. From January to October of 2008, a period encompassing the entire time the promissory notes were sold by the Defendants, Nations Warranty accumulated net losses of at least $1.2 million.

b. The misrepresentation that principal and interest payments to investors were guaranteed. In the Receiver's investigation, no insurance policies, reserve funds or other such programs were found to ensure that funds were available to make payments to investors.

c. The omission of the fact that the president of J W & P was enjoined by the SEC in 2007 against violations of the registration and antifraud provisions of federal securities laws due to his involvement in a Ponzi scheme.

27.

Investors, after having purchased promissory notes through the Defendants' efforts, unknowingly found themselves involved in what was truly a Ponzi scheme.

28.

The unprofitable warranty sale operations of Nations Warranty generated insufficient revenue to cover the interest payments to noteholders. Instead, Nations Warranty relied on the revenue from the purchasers of new promissory notes to make the interest payments to the earlier investors.

29.

Moreover, the warranty sale operations did not provide the revenue needed to repay the principal amounts on the promissory notes as they came due. By encouraging noteholders to "roll the notes over" instead of demanding their return of principal, the Defendants delayed the inevitable collapse of Nations Warranty's fraudulent scheme.

30.

To encourage these rollovers, Nations Warranty would offer an additional commission payment to the original salesperson if the noteholder agreed to a

rollover.  Notably, this commission payment was made even though no additional capital came into Nations Warranty through the rollover.

31.

At least some of the Defendants encouraged investors to take out cash advances on credit cards in an effort to quickly raise funds to purchase the promissory notes.

32.

In seeking out likely purchasers of promissory notes, Defendants used sales pitch questions specifically directed as business owners and churches.

33.

Defendants knew, or were reckless in not knowing, that the Nations Warranty promissory notes program constituted a Ponzi scheme.

34.

The funds used to pay the commissions to the Defendants constitute ill-gotten gains obtained from the fraudulent sale of unregistered securities. Defendants do not have a legitimate claim to the commissions because the commissions were paid to them as compensation for their participation in the unlawful sale of unregistered securities.

11

## COUNT ONE – UNJUST ENRICHMENT

35.

Plaintiff incorporates paragraphs 1 through 34 as if fully set forth in this paragraph.

36.

The commissions paid to each of the Defendants are proceeds that were unlawfully obtained from investors through the sale of securities by means of artifice or fraud. Those proceeds received by the Defendants are impressed with a constructive trust.

37.

The Defendants, in receiving the proceeds, have been unjustly enriched.

38.

The Receiver is entitled to recover the commissions received by the Defendants.

WHEREFORE, Plaintiff respectfully requests the following:

1. service of process to issue as authorized by law;

2. damages awarded against each Defendant in an amount equal to the commissions received by such Defendant; and

12

3.  such other and further relief as this Court deems just and equitable.

Respectfully submitted this __20ᵗʰ__ day of __December__, 2010.

WILLIAMS TEUSINK LARSEN

Eric Teusink
Attorney for Receiver
Georgia Bar No. 781156

Williams Teusink Larsen
125 E. Trinity Place, Suite 300
Decatur, GA 30030
404-373-9590 – office
404-378-6049 – facsimile
eteusink@wtl-law.com

13